EILEEN M. DECKER
United States Attorney
PATRICIA A. DONAHUE
Chief National Security Division
B. CELESTE CORLETT
Arizona State Bar No. 021724
Assistant United States Attorney
      8000 United States Courthouse
      411 West Fourth Street
      Santa Ana, California 92701
      Telephone:  (714) 338-3541
      Facsimile:  (714) 338-3708
      E-mail:     Celeste.Corlett@usdoj.gov
ANNAMARTINE SALICK (Cal. Bar No. 309254)
Assistant United States Attorney
      312 North Spring Street
      Los Angeles, California 90012
      Telephone:  (213) 894-3424
      Facsimile:  (213) 894-6436
      E-mail:     Annamartine.Salick2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                  Plaintiff,<br><br>           v.<br><br>ADAM DANDACH,<br>Aka, Fadi Fadi Dandach,<br><br>                  Defendant. | No. SA CR 14-109-JVS<br><br>GOVERNMENT'S REPLY TO DEFENDANT'S<br>OBJECTIONS TO PRESENTENCE<br>INVESTIGATION REPORT<br><br>Sentencing Date:  July 25, 2016<br>Sentencing Time:  9:00 a.m.<br>Before Honorable James V. Selna |

        Plaintiff United States of America, by and through its counsel
of record, the Office of the United States Attorney for the Central
District of California, hereby files the Government's Reply to the
Defendant's Objections to Pre-Sentence Investigation Report.

        Defendant makes several variations of objections to the Pre-
Sentence Investigation Report's ("PSR") discussion of the

1

designation of the Islamic State of Iraq and the Levant ("ISIL") as
a Foreign Terrorist Organization ("FTO").  Each of these objections
is without merit; the facts were admitted to by defendant in the
plea agreement and at the change of plea hearing as discussed in
detail below.

**A. Response to Defendant's Objection, Paragraph 2**

Defendant makes a "continuing objection to the date of
designation of 'ISIL' as a Foreign Terrorist Organization."  (CR 125
at 2.)  This is in opposition to defendant's plea agreement.
Defendant admitted he was guilty of the offenses to which he pled
guilty and to the facts supporting the guilty plea.  (CR 71 at 22.)
The plea agreement's factual basis stated, in part, that on October
15, 2004, the U.S. Secretary of State designated al-Qa'ida in Iraq
("AQI") as an FTO, and on May 15, 2014, the Secretary of State
amended the designation of AQI as an FTO to add the alias Islamic
State of Iraq and the Levant as its primary name, and various
aliases including the Islamic State of Iraq and al-Sham ("ISIS").
(Id. at 21-22.)  Further, the factual basis stated, "Thus,
continuously since October 15, 2004, ISIL has been a designated
foreign terrorist organization."  (Id. at 8.)

During the change of plea hearing, these facts were read aloud
to defendant (id. at 23) and defendant, under oath (id. at 5), told
this Court that he understood everything that was stated in the
factual basis and that it was true and correct (id. at 27).  He also
admitted that he understood that the U.S. government had designated
ISIL as an FTO.  (Id. at 30.)

///

**B. Response to Defendant's Objection, Paragraph 3**

Next, defendant claims that he could not know that ISIL was a designated FTO beginning in November 2013 because he argues it was not designated as an FTO at that time.  (CR 125 at 2.)

First, defendant takes the PSR statement to which he is objecting out of context.  The PSR begins in paragraph eleven, reciting the exact language in the plea agreement, as described above regarding the designation of AQI as an FTO and the later amendments including the various AQI aliases, such as ISIL and ISIS.  (PSR at ¶ 11.)  The PSR notes, "Hereinafter, the name 'ISIL' will be used to reference the organization and its various names."  (PSR at n.4.)  The paragraph concludes, the same as the plea agreement, "[t]hus continuously since October 15, 2004, ISIL has been designated as a FTO."  (Id.)  The reference to November 13 is in the next paragraph:

> Beginning in approximately November 2013 and continuing
> through July 2, 2014, Dandach attempted to travel from the
> United States to Syria for the purpose of providing
> material support and resources, including services and
> personnel, namely himself, to ISIL, knowing he would be
> working, and intending to work, under ISIL's direction and
> control.  Dandach knew that ISIL was a designated FTO . .
> . . .

PSR at ¶ 13.)  The date, November 2013, is referencing when the defendant began to attempt to travel to Syria, not when defendant knew ISIL was a designated FTO.

Second, the name ISIL is used in the PSR, the same as it was used in the plea agreement (CR 71 at n.1), to reference AQI and all of its aliases.  As stated in the plea agreement, the FTO AQI was designated in October 2004, thus, throughout the

3

time referenced in the PSR, the organization known as AQI, and later ISIL, was a designated FTO.  Again, defendant admitted to these facts in the signed plea agreement and acknowledged the same under oath.

Next, Defendant disputes the language used to describe ISIL, such as "mass destruction." (CR 125 at 2-3.)  The plea agreement stated, "[a]t all relevant times, defendant knew that ISIL's goal was to intimidate and coerce a civilian population . . . by mass destruction . . . . (CR 71 at 8.)  Defendant has previously admitted to these facts in the plea agreement.

**C. Response to Defendant's Objection, Paragraph 4**

Defendant next objects to the statement, "[i]n December 2013, Dandach first attempted to travel to Syria for the above-described purposes."  (CR 125 at 3.)  Defendant objects because he claims, again, that in "December 2013, ISIL and/or ISIS were not a designated FTO," so he could not have traveled to Syria for the purpose of aiding an FTO.  (Id.)  This is the same argument and counterargument as described above.  As agreed to in the plea agreement and discussed above, AQI, also under the alias' ISIL and ISIS, has been a designated FTO since October 2004.

**D.   Response to Defendant's Objection, Paragraph 5**

Defendant objects to the PSR's description of the defendant's obstruction of justice conduct charged in the First Superseding Indictment.  (CR 125 at 4.)  Defendant argues that there is no evidence in the record that a family member deleted his posts.  (Id.)

4

The plea agreement specifically provided, and defendant agreed, that at the time of sentencing, the Court may "consider any dismissed charges in determining . . . the sentence to be imposed." (CR 71 at 3.)

Defendant was charged with attempting to destroy and conceal a record with the intent to impair its integrity and availability for use in an official proceeding, in violation of 18 U.S.C. § 1512(c)(1). (CR 28 at 5.) The basis for the charge was that defendant, while detained pending these charges, called from the jail to a family member and directed her to delete posts he made on an internet website. (See Attachment 1.) Defendant told his family member he needed her to do this in case the FBI tried to use the information against him. (See Attachment 1 at ¶ 3.) These tape recordings of defendant's phone calls were provided to defendant in discovery.

The PSR did not add an adjustment for obstruction to the Guidelines calculation. (PSR at ¶ 31.) However, defendant's conduct should be considered by the Court in determining an applicable sentence to be imposed. Defendant attempted to destroy and conceal his internet records so that FBI would not have the records to use against him in legal proceedings.

**E.   Response to Defendant's Objection, Paragraph 6**

Defendant appears to object to some portion of paragraph 29 which adds a 12-level adjustment for committing a crime that involved a federal crime of terrorism. (CR 125 at 4.)

In the plea agreement, defendant agreed the 12-level adjustment was appropriate, "Defendant and the USAO agree that

1   the following is the applicable Sentencing Guidelines
2   calculation:  . . . . Terrorism Adjustment: +12 (U.S.S.G. §
3   3A1.4(a)). . . ."  (CR 71 at 11-12.)
4        Perhaps, defendant is arguing against the specific
5   language used to describe ISIL's terrorist acts in paragraph
6   29.  Defendant claims that prior to his arrest, ISIL was not
7   engaged in "wanton killing of civilian prisoners . . ." and
8   other terrorist acts.
9        However, defendant admitted in his plea agreement that he
10  knew that ISIL was a designated terrorist organization, as
11  described previously.  Additionally, as described through the
12  testimony of FBI Special Agent Wales and the expert report,
13  defendant possessed hundreds of pages of materials supporting
14  that he knew ISIL was a terrorist organization.
15       SA Wales testified that he found in defendant's property
16  materials supporting martyrdom, Jihad, and training manuals
17  promoting violence with terrorist groups."  (RT 4/21/2016 at
18  31.)  Further, SA Wales testified that when the FBI interviewed
19  defendant the day before his arrest, defendant admitted that he
20  believed that "the tactic of decapitating and beheading
21  prisoners of war" was justified.  (Id. at 38.)  Defendant even
22  had on his personal cellular telephone a tweet by an ISIL
23  facilitator that pictured four decapitated heads.  (Id.)
24  Defendant's objections to the description of ISIL in paragraph
25  29 are without merit.
26       **F.   Response to Defendant's Objection, Paragraph 7**
27       Defendant objects to the PSR description of the offense of
28  making a false statement in a passport.  (CR 125 at 5.)  The

language used to describe the offense is almost identical to
the language in the plea agreement which defendant signed and
admitted under oath to be true and correct. (CR 71 at 9; CR 77
at 25.) Additionally, at the time of the change of plea, the
defendant specifically described his offense conduct to the
Court. (CR 77 at 29-30.) He told the Court that he made a
"silly excuse on a passport application about how I lost my
original passport when I went to apply for a new one." (Id. at
29.) He admitted that he knew it was false when he made it, he
voluntarily made the statement, and he understood that passport
authorities would rely upon it. (Id. at 29-30.) The PSR's
description is mirrored in the plea agreement and court record.

**G.    Response to Defendant's Objection, Paragraph 8**

Defendant objects to the PSR's characterization of his
writings, specifically the writing entitled, "To Whom It May
Concern." (Attachment 2.) The PSR's description is an
reasonable interpretation of the writing. The defendant's
claim that he is not seeking personal revenge is belied by at
least one line in the referenced writing, "Oh, Allah avenge
me!" The claim that revenge by God is "universally held by
people of all faiths" clearly ignores the context of the
writing and the defendant's support of a terrorist organization
and its brutal acts.

**H.    Response to Defendant's Objection, Paragraph 9**

Defendant's objection to the PSR's statement that
defendant was obese until he was 19 is unclear. (CR 125 at 5.)
The facts as described in the PSR are supported by the many

medical records reviewed by the mental health expert and reported similarly. (*See* Dr. Faerstein report pp. 5-6.)

**I.   Response to Defendant's Objection, Paragraph 10**

Defendant objects to the PSR statement that defendant reported to a staff member at school that he and his brother often go to a shooting range. (CR 125 at 6.) This is a statement that was made in a medical record and it is reported as such. Apparently defendant is now claiming that statement was untrue.

**J.   Response to Defendant's Objection, Paragraph 11**

This is not an objection but merely a claim by defendant as to his reason for his violent writings and a claim that he does not believe in the killing of innocent lives. (CR 125 at 6.) Again, this is belied by the hundreds of photos and documents in his possession at the time of his arrest that supported violence as described throughout the terrorism expert report, the psychiatrist report, and the testimony of SA Wales, as discussed previously.

**K.   Response to Defendant's Objection, Paragraph 12**

Defendant claims that the violent statements in is writings should not be attributed to his personal views. (CR 125 at 6.) The writings speak for themselves and they are violent and specifically support violence. (*See* CR 127, Attachment 2, 3, Government's Objections to PSR.)

**L.   Defendant's Request for a Hearing Is Not Appropriate**

Defendant requests a hearing requiring the government to prove the conclusions contained in the PSR. It is not appropriate in this case.

8

When a defendant objects to facts in the PSR, the district court must resolve the factual dispute.  Fed. R. Crim. P. 32(i)(3)(B).  The government "bears the burden of proof for any fact that the sentencing court would find necessary to determine the base offense level."  United States v. Ameline, 409 F.3d 1073, 1085 (9th Cir. 2005).  However, the Court "may accept any undisputed portion of the [PSR] as a finding of fact;" and "must—for any disputed portion of the [PSR] or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing."  R. 32(i)(3)(A),(B).

In this case, defendant has not disputed all of the PSR facts, thus, the Court may rely on the undisputed portions. Next, those objections raised by defendant do not affect sentencing.  The base offense level and adjustments were agreed to by the parties through a plea agreement and are not in dispute.  Thus, the government does not have the burden to prove additional facts to support the base offense level or the adjustments, since they have already been agreed and are not in dispute.

Additionally, the government has already provided abundant evidence to support the facts reflected in the PSR and the agreed upon offense level.  Defendant admitted under oath to all of the facts in the plea agreement.  The government provided a thorough terrorism expert report describing the acts of defendant and a psychiatrist's expert report describing defendant's mental health and dangerousness.  The Court also

held a two-day evidentiary hearing after the PSR was provided to the parties.  At the hearing, the Court heard testimony of the case agent and psychiatrist regarding the defendant's dangerousness and facts surrounding the offenses all of which support the offense levels.  Defendant had an opportunity to present his own evidence to support any departures and to contest the government's evidence at the two-day evidentiary hearing.  He did so through lengthy cross-examinations of the government's witnesses and he presented his own witnesses to support his position.

For all of these reasons, an additional evidentiary sentencing hearing is not appropriate in this matter.

Dated:  July 15, 2016

Respectfully submitted,

EILEEN M. DECKER
United States Attorney

/s/
_____
CELESTE CORLETT
ANNAMARTINE SALICK
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA