E. MARTIN ESTRADA
United States Attorney
DAVID T. RYAN
Assistant United States Attorney
Chief, National Security Division
MARK TAKLA (Cal. Bar No. 218111)
Assistant United States Attorney
Deputy Chief, Terrorism and Export Crimes Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:  (213) 393-8125
    Email:      mark.takla@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. SA CR 14-109-JVS |
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A) |
| v. | |
| ADAM DANDACH, | |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney's Office for the Central District of California and Assistant United States Attorney Mark Takla, hereby files this response to defendant's motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) (Dkt. 144).  The Court should deny defendant's motion.

//

//

This Response is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: October 4, 2024          Respectfully submitted,

                                E. MARTIN ESTRADA
                                United States Attorney

                                DAVID T. RYAN
                                Assistant United States Attorney
                                Chief, National Security Division


                                      /s/
                                _____
                                MARK TAKLA
                                Assistant United States Attorney

                                Attorneys for Plaintiff
                                UNITED STATES OF AMERICA

## **TABLE OF CONTENTS**

DESCRIPTION                                                                      PAGE

I.   INTRODUCTION...............................................................1

II.  STATEMENT OF FACTS.........................................................2

     A.   Defendant's Crimes and Sentence...............................2

     B.   Defendant's Criminal Case.....................................4

     C.   Incarceration and Projected Release Date......................4

     D.   Defendant's Current Motion for Compassionate Release
          and Exhaustion of Administrative Remedies.....................4

     E.   Defendant's Misconduct While in Prison........................4

III. LEGAL FRAMEWORK FOR COMPASSIONATE RELEASE.........................5

IV.  ARGUMENT...................................................................8

     A.   Defendant Committed a Serious Offense Warranting the
          Sentence the Court Imposed....................................8

     B.   Defendant Remains a Danger to the Community, and
          Public Safety Counsels Against Early Release.................10

     C.   Defendant's Health Concerns Do Not Overcome the
          Factors that Weigh Against Release...........................10

V.   CONCLUSION................................................................11

# TABLE OF AUTHORITIES

DESCRIPTION                                                                PAGE(S)

**Cases**

Dillon v. United States,
    560 U.S. 817 (2010) ................................................ 5

Freeman v. United States,
    564 U.S. 522 (2011) ................................................ 5

Gall v. United States,
    552 U.S. 38 (2007) ................................................. 9

Roberts v. Dist. Ct.,
    339 U.S. 844 (1950) ............................................... 7

United States v. Applewhite,
    2020 WL 137452 (D. Or. Jan. 13, 2020) ........................... 11

United States v. Aruda,
    993 F.3d 797 (9th Cir. 2021) ................................... 5, 6

United States v. Bryant,
    996 F.3d 1243 (11th Cir. 2021) .................................... 6

United States v. Chambliss,
    948 F.3d 691 (5th Cir. 2020) ...................................... 8

United States v. Keller,
    2 F.4th 1278 (9th Cir. 2021) ............................... 6, 7, 8

United States v. Kelley,
    962 F.3d 470 (9th Cir. 2020) ...................................... 7

United States v. Mercado-Moreno,
    869 F.3d 942 (9th Cir. 2017) ................................... 5, 7

United States v. Osinger,
    753 F.3d 939 (9th Cir. 2014) ...................................... 9

United States v. Ruffin,
    978 F.3d 1000 (6th Cir. 2020) ..................................... 8

**Statutes**

18 U.S.C. § 111................................................... 5

### TABLE OF AUTHORITIES (CONTINUED)

DESCRIPTION                                                                 PAGE

18 U.S.C. § 1542...................................................... 1

18 U.S.C. § 2339...................................................... 1

18 U.S.C. § 3553.................................... 2, 11, 10, 9, 8

18 U.S.C. § 3582.................................... 1, 5, 6, 7

28 U.S.C. § 994...................................................... 11

**Rules**

U.S.S.G. § 1B1.13..................................................... 6

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   INTRODUCTION

3

Defendant ADAM DANDACH pleaded guilty to violations of 18 U.S.C.
§ 2339B (Attempting to Provide Material Support to a Designated
Foreign Terrorist Organization) and 18 U.S.C. § 1542 (Making a False
Statement in a Passport Application), in connection with his attempt
to travel to Syria to fight for the Islamic State of Iraq and al-Sham
("ISIS").  (Court's Sentencing Memorandum, at 2, Dkt. 137; Plea
Agreement ¶ 12, Dkt. 71.)

Defendant's offense and the circumstances surrounding it as
described in this case are extremely serious.  Defendant's
communications as well as his actions demonstrated his commitment to
extremist principles, his support for a designated foreign terrorist
organization, and his desire to engage in violent acts in furtherance
of those extremist principles.  These facts show that the defendant's
conduct was serious with the potential for harm and loss of life had
his conduct not been discovered by the FBI.

Here, defendant has not met the "extraordinary and compelling"
standard for compassionate release.  According to his motion,
defendant's physical health is "average" and his mental health is
currently "well controlled."[1]  In reality, defendant appears to be
relitigating his sentencing as his motion and supporting exhibits
focus on his alleged rehabilitation rather than justifying why the
Bureau of Prisons cannot meet his medical needs.  Defendant's conduct

---

[1] The government obtained and is in possession of thousands of pages of defendant's medical records.  In light of defendant's concessions relating to his physical and mental health, the government did not believe they were necessary and has not filed them.  The government will file if the Court believes they will be helpful in this motion.

in prison belies that he has been rehabilitated.  Not only has

defendant repeatedly engaged in violence while in prison, he was also

separately prosecuted in Minnesota for punching a nurse and knocking

out a nurse's tooth, resulting in a 27-month term of imprisonment.

Defendant is still a danger to society.  He has not met the standard

for compassionate release, nor do the 18 U.S.C. § 3553 factors weigh

in favor of release.  Defendant's motion should be denied.

## II.  STATEMENT OF FACTS

### A.  Defendant's Crimes and Sentence

According to the factual basis of his plea agreement:

Beginning in approximately November 2013 and continuing
through July 2, 2014, defendant attempted to travel from
the United States to Syria for the purpose of providing
material support and resources, including services and
personnel, namely himself, to ISIL, knowing he would be
working, and intending to work, under ISIL's direction and
control.  At all relevant times, defendant acted knowingly
and intentionally; defendant knew that ISIL was a
designated foreign terrorist organization and had engaged
in, and was engaging in, terrorist activity and terrorism.
At all relevant times, defendant knew that ISIL's goal was
to intimidate and coerce a civilian population; influence
the policy of a government by intimidation and coercion,
and affect the conduct of a government by mass destruction,
assassinations, and kidnappings.

From approximately March 2013 through July 2, 2014,
defendant supported violent jihad against persons he
considered "occupiers" of Afghanistan, Iraq, and Syria.

Defendant first attempted to travel to Syria for these
purposes in December 2013.  He requested an expedited
passport in November 2013, and received it in December
2013.  Defendant booked a flight and he intended to fly on
December 25, 2013 to Istanbul, Turkey. Defendant's travel
was delayed when a family member, upon learning of his
intended travel, took away from defendant his United States
passport and the money he intended to use to travel to
Syria.

Afterwards, defendant continued to make plans to carry out
his intention to provide material support and resources to
ISIL.  Defendant corresponded and planned with others who
were in Syria, including at least one person who was in
Syria fighting for ISIL, so he could travel to Syria to

2

1    work under the direction and control of ISIL.  Defendant
     obtained information and guidance to achieve this purpose,
2    including booklets on how to travel to Syria, flights to
     the area, and maps of ISIL-controlled areas. Defendant
3    applied for an expedited 2014 passport and falsely stated
     on his application that he had lost his 2013 passport when
4    he accidently threw it in the trash in June 2013.
     Defendant knew at the time that he made the statement it
5    was false.  Defendant knew that his family member had taken
     his passport from him in December 2013, and he had not lost
6    it.

7    On July 1, 2014, defendant obtained his 2014 passport from
     the State Department.  On the same date, defendant booked a
8    July 2, 2014 flight from Santa Ana, California to Istanbul,
     Turkey.  After arriving in Istanbul, defendant intended to
9    travel from Istanbul to Syria.

10   On July 2, 2014, defendant arrived at the John Wayne
     Airport in Santa Ana California.  He had luggage, including
11   a laptop computer and a Smartphone.  Located in the
     Smartphone, he had downloaded nasheeds (jihadi songs)
12   supporting ISIL fighting, maps of ISIL controlled areas,
     Twitter updates on ISIL fighting in Syria and Iraq, and a
13   pamphlet on how to reach a Syrian border city from Istanbul
     (which he last accessed on July 2, 2014).  On July 2, 2014,
14   defendant emailed his friend that he did not know why
     people did not step forward and help the situation, and
15   complained "how people expect a khilafah to arise without
     bloodshed" and claimed that "it's a golden opportunity."
16   On the same date, approximately two hours before his
     scheduled flight to Istanbul, Turkey, defendant presented
17   his 2014 passport to the Delta Air Lines agent in an
     attempt to fly to Istanbul, Turkey.
18
     On July 2, 2014, defendant admitted to Federal Bureau of
19   Investigation ("FBI") Special Agents that he intended on
     that date to fly to Istanbul, Turkey and his ultimate
20   destination was ISIL-controlled Syria.  He intended to
     pledge allegiance to the leader of ISIL, Al-Baghdadi.  And,
21   he intended to live under the control of ISIL. Defendant
     intended to take weapons training from ISIL to defend
22   himself. Further, defendant told FBI Special Agents that
     ISIL had declared a caliphate on June 29, 2014, and that it
23   was mandatory for every Muslim who is able to migrate to
     the land of Islam.  He admitted that he stated that if
24   someone wants to invade "our land, we have to fight back."
     Defendant considered the invaded lands to be Afghanistan,
25   Iraq, and Syria.

26   (Plea Agreement, Dkt. 71.)

27

28

                                  3

**B.   Defendant's Criminal Case**

After defendant's guilty plea, this Court sentenced him to terms of imprisonment of 180 months on Count 1 and 120 months on Count 1, to be served concurrently.

Prior to sentencing defendant, the Court held an evidentiary hearing on the sentencing factors, hearing from mental health professionals called by both parties.  (Minutes, Dkt. 124.)  The Court had a robust record from which to evaluate defendant's mental health mitigation during sentencing.  And the Court did consider it when it adopted a 7-level departure in light of defendant's age, history of abuse as a child, and physical and mental conditions. (Court's Sentencing Memorandum, Dkt. 137, at 3.)

**C.   Incarceration and Projected Release Date**

Defendant is currently serving his sentence at Federal Medical Facility Rochester.  His projected release date is October 25, 2027. Thus, defendant has served approximately 122 months, or about 68% of his 180-month sentence.

**D.   Defendant's Current Motion for Compassionate Release and Exhaustion of Administrative Remedies**

Defendant filed his requests for release with the correctional facilities on August 1, 2023 and July 30, 2024.  Both requests were denied.

**E.   Defendant's Misconduct While in Prison**

Despite defendant's claims of rehabilitation, defendant has repeatedly assaulted and threatened bodily harm to others:

| Date | Offense | Result |
|---|---|---|
| 1/24/2024 | Assault inmate without serious injury | Disallow of good conduct time (suspended), disciplinary segregation (suspended) loss of commissary privileges, loss of email privileges |

| 12/15/2023 | Assault inmate without serious injury | Disallow of good conduct time (suspended), disciplinary segregation (suspended) loss of commissary privileges, loss of in person visiting privileges |
|---|---|---|
| 7/20/2022 | Threatening bodily harm | Not competent and not responsible |
| 7/07/2022 | Threatening bodily harm | Not competent and not responsible |
| 6/05/2022 | Threatening bodily harm | Not competent and not responsible |
| 3/23/2022 | Threatening bodily harm | Not competent and not responsible |
| 11/19/2019 | Threatening bodily harm | Not competent and not responsible |
| 8/25/2019 | Assault without serious injury | Loss of recreation privileges |
| 7/27/2019 | Assault without serious injury | Unknown |

(Exhibit A.)  On August 25, 2019, defendant punched a nurse in the mouth, knocking out a front tooth and splitting the nurse's lip.  He was criminally prosecuted for a violation of 18 U.S.C. § 111(a)(1) (Assaulting, Resisting, or Impeding Certain Officers or Employees). (Exhibit B.)  He pleaded guilty and was sentenced to 27 months of imprisonment.  (Id.)  There is some evidence to suggest that he was not receiving proper mental health treatment prior to being housed at Federal Medical Facility Rochester.  (Exhibit C.)  As he was housed at Federal Medical Facility Rochester September 4, 2019 through October 22, 2021 and from March 2, 2022 to the present (Under Seal Exhibit AA), he has engaged in misconduct while at Federal Medical Facility Rochester.  (Exhibit A.)  The Bureau of Prisons as assessed him to be a "high risk of recidivism."  (Under Seal Exhibit CC.)

**III. LEGAL FRAMEWORK FOR COMPASSIONATE RELEASE**

After a sentence is imposed, the "rule of finality" generally forbids its modification.  Freeman v. United States, 564 U.S. 522, 526 (2011) (plurality opinion); Dillon v. United States, 560 U.S. 817, 824-25 (2010); United States v. Aruda, 993 F.3d 797, 799 (9th

5

1  Cir. 2021); <u>United States v. Mercado-Moreno</u>, 869 F.3d 942, 948 (9th
2  Cir. 2017).  Compassionate release is one of the "few narrow
3  exceptions," <u>Freeman</u>, 564 U.S. at 526, allowing a court to "reduce
4  the term of imprisonment" and "impose a term of probation or
5  supervised release with or without conditions that does not exceed
6  the unserved portion of the original term of imprisonment," 18 U.S.C.
7  § 3582(c)(1)(A); <u>Aruda</u>, 993 F.3d at 799-800.

8      Because this relief is drastic and permanent, courts are never
9  obligated to award it.  Rather, this Court "may" reduce a sentence
10 but only if the defendant satisfies three statutory requirements.

11     <u>First</u>, the Court can evaluate a request for compassionate
12 release only after the defendant has met an administrative exhaustion
13 requirement.  Specifically, a defendant must wait until the "lapse of
14 30 days from the receipt of such request by the warden of the
15 defendant's facility." 18 U.S.C. § 3582(c)(1)(A).  This requirement
16 is mandatory so long as the government invokes it.  <u>United States v.</u>
17 <u>Keller</u>, 2 F.4th 1278, 1282 (9th Cir. 2021).  Defendant has met the
18 exhaustion requirement here.

19     <u>Second</u>, in evaluating compassionate release requests, courts
20 must determine whether a defendant has presented "extraordinary and
21 compelling reasons" for release.  18 U.S.C. § 3582(c)(1)(A)(i).[2]  The
22 Ninth Circuit has held that there are no currently "applicable policy
23 statements," 18 U.S.C. § 3582(c)(1)(A), defining what reasons are
24 "extraordinary and compelling" where a defendant moves for
25 compassionate release.  <u>Aruda</u>, 993 F.3d at 801-02; <u>but see United</u>

26 _____

27     [2] 18 U.S.C. § 3582(c)(1)(A)(ii) authorizes an alternative basis
   for release but only if a defendant is at least 70 years old.  That
28 provision does not apply here.

6

1  States v. Bryant, 996 F.3d 1243, 1252-62 (11th Cir. 2021).

2  Accordingly, district courts have discretion to determine whether a

3  defendant's proffered reasons are "extraordinary and compelling," and

4  that discretion may be informed but not strictly limited by the

5  policy statements in U.S.S.G. § 1B1.13.  See Aruda, 993 F.3d at 802.

6  Nonetheless, the plain meaning of the term "extraordinary and

7  compelling" reflects Congress's intent that only rare circumstances

8  should qualify for release.  See Roberts v. Dist. Ct., 339 U.S. 844,

9  845 (1950) (per curiam) ("extraordinary" remedies are reserved for

10 "rare" cases).  Section 3582 does not authorize a "plenary

11 resentencing proceeding," let alone a re-litigation of facts.  See

12 Moreno, 869 F.3d at 956 (citing Dillon); United States v. Kelley, 962

13 F.3d 470, 477 (9th Cir. 2020) (the First Step Act "does not permit a

14 plenary resentencing").

15     Defendant has not met the "extraordinary and compelling" reasons

16 requirement here.  Defendant concedes that his physical health is

17 "average" and that his mental health "is at this time well

18 controlled."  (Def.'s Mot., at 2.)  While defendant suffers from

19 schizoaffective disorder, bipolar type 1, autism spectrum disorder,

20 and post-traumatic stress disorder, he is housed at a medical care

21 facility which provides the highest level of care for mental health

22 conditions.  Defendant appeared to file this motion to present

23 evidence to the Court that he is rehabilitated.  These are not

24 "extraordinary and compelling" reasons as the Court fully and

25 thoroughly evaluated defendant's mental health condition in

26 imposition a 7-level reduction in his sentence.  Defendant has not

27 met the standard.

28

1    <u>Third</u>, even if the first two requirements are met, courts must

2    consider the "factors set forth in section 3553(a) to the extent that

3    they are applicable." 18 U.S.C. § 3582(c)(2). A court should deny a

4    sentence reduction if the defendant does not establish that the

5    balance of the applicable § 3553(a) factors weigh in favor of

6    release. <u>See</u> <u>Keller</u>, 2 F.4th at 1283-84. "This last [§ 3553(a)]

7    requirement confirms an overarching point: The district court has

8    substantial discretion. The statute says that the district court

9    'may' reduce a sentence if it finds the first two requirements met;

10   it does not say that the district court must do so." <u>United States</u>

11   <u>v. Ruffin</u>, 978 F.3d 1000, 1005 (6th Cir. 2020); <u>see also</u> <u>Keller</u>, 2

12   F.4th at 1284 (district court did not abuse its discretion in denying

13   compassionate release based on § 3553(a) factors); <u>United States v.</u>

14   <u>Chambliss</u>, 948 F.3d 691, 693-94 (5th Cir. 2020) (same, even where

15   defendant was terminally ill). As explained below, defendant has not

16   met this requirement.

17   **IV.    ARGUMENT**

18       The § 3553(a) factors do not warrant compassionate release here.

19   Those factors--which this Court already considered when imposing

20   defendant's sentence--do not support his request for premature,

21   permanent release. Rather, they support his original sentence.

22       **A.    Defendant Committed a Serious Offense Warranting the**
             **Sentence the Court Imposed**

23

24       "[T]he nature and circumstances of the offense," and the need

25   "to reflect the seriousness of the offense, to promote respect for

26   the law, and to provide just punishment for the offense" all weigh

27   against defendant's motion for release. 18 U.S.C. §§ 3553(a)(1),
     (2)(A).

28

1    Defendant had been planning for over a year to join ISIL, a

2 terrorist organization that he knew committed horrifically violent

3 acts.  (Gov't Response to Presentence Investigation, Dkt. 127.)

4 Defendant admitted that ISIL committed these atrocities to instill

5 fear in its enemies.  He admitted that he intended to pledge

6 allegiance to the leader of ISIL.  And, he admitted that he would do

7 whatever ISIL's leader asked of him.  Defendant watched ISIL training

8 videos prior to his attempt to travel to join them.  He communicated

9 with fighters who were already on the battlefield.  He regularly

10 received updates of the ISIL battles.  He had maps of the areas

11 controlled by ISIL.  He admitted that he was going to a battlefield

12 and he would need to be trained to handle weapons.  He sang jihadi

13 nasheeds claiming "I am a terrorist" in the months leading up to his

14 attempted travel. He told his social media friend that he wished to

15 fight one day. And, on the day he attempted to travel to join ISIL,

16 he told his friend, "Idk [I don't know] how people expect a khilafah

17 [the Islamic State] to arise without bloodshed and fitnah these

18 days."  Defendant intended to provide himself to ISIL, a foreign

19 terrorist organization, and he intended to commit violent acts.

20    Requiring defendant to complete his below-Guideline-range

21 sentence also furthers "the need to avoid unwarranted sentence

22 disparities among defendants with similar records who have been found

23 guilty of similar conduct."  18 U.S.C. § 3553(a)(6).  Indeed, that is

24 the very purpose of the Sentencing Guidelines; they exist to ensure

25 national uniformity in sentencing, and "avoidance of unwarranted

26 disparities was clearly considered by the Sentencing Commission when

27 setting the Guidelines ranges."  Gall v. United States, 552 U.S. 38,

28 54 (2007); see also United States v. Osinger, 753 F.3d 939, 949 (9th

Cir. 2014) ("[W]e have trouble imagining why a sentence within the
Guidelines range would create a disparity, since it represents the
sentence that most similarly situated defendants are likely to
receive."). Releasing defendant before the completion of his below-
Guideline sentence will create, not avoid, unwarranted disparities
between similarly-situated defendants.

### B. Defendant Remains a Danger to the Community, and Public Safety Counsels Against Early Release

The need "to afford adequate deterrence to criminal conduct" and
"to protect the public from further crimes of the defendant" also
counsel against defendant's request for early release. 18 U.S.C.
§§ 3553(a)(2)(B), (C). The record here reflects that defendant poses
a real and continuing danger to the community.

Defendant's offense and the circumstances surrounding it as
described in this case are extremely serious. Defendant's
communications as well as his actions demonstrated his commitment to
extremist principles, his support for a designated foreign terrorist
organization, and his desire to engage in violent acts in furtherance
of those extremist principles. These facts show that the defendant's
conduct was serious with the potential for harm and loss of life had
his conduct not been discovered.

Since being sentenced to prison, he has threatened others and
committed assaults, including one against a health care provider.
Defendant is not rehabilitated and is still a danger to the
community.

### C. Defendant's Health Concerns Do Not Overcome the Factors that Weigh Against Release

Although the Court may also consider the need to provide
defendant with effective medical care, see 18 U.S.C. § 3553(a)(2)(D),

10

defendant has not established that the BOP is unable to manage his health conditions.  In fact, defendant agrees that his mental health condition is "well controlled," despite misconduct in early 2024.

Finally, defendant's age and purported rehabilitation do not outweigh the factors supporting his continued incarceration. Compassionate release is not warranted merely because an inmate is young and has behaved in prison.  "Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" for purposes of compassionate release, 28 U.S.C. § 994(t), and even performance as a "model inmate" cannot justify an "abrupt departure from [a defendant's] current sentence," United States v. Applewhite, 2020 WL 137452, at *2 (D. Or. Jan. 13, 2020).  There is, of course, a significant difference between avoiding prison discipline and obeying the laws and rules out of custody.  Defendant's crime, coupled with his criminal history weigh heavily against release.

At bottom, granting compassionate release would undermine the 18 U.S.C. § 3553(a) factors, resulting in an effective sentence of just 122 months--far below the applicable Guideline range and lower than the sentence this Court previously rejected.  The law, and the specific facts of defendant's case, do not support that result.

**V.   CONCLUSION**

Defendant's motion for release should be denied.

Dated: October 4, 2024          Respectfully submitted,


                                _____/s/_____
                                MARK TAKLA
                                Assistant United States Attorney

                                Attorney for Plaintiff
                                UNITED STATES OF AMERICA

EXHIBIT A

```
 LOSB7          *      INMATE DISCIPLINE DATA        *      09-09-2024
PAGE 001        *    CHRONOLOGICAL DISCIPLINARY RECORD  *      10:06:07

REGISTER NO: 67945-112 NAME..: DANDACH, ADAM
FUNCTION...: PRT        FORMAT: CHRONO    LIMIT TO ___ MOS PRIOR TO 09-09-2024

------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 3884938 - SANCTIONED INCIDENT DATE/TIME: 01-24-2024 0620
DHO HEARING DATE/TIME: 02-13-2024 1440        DHO REPT DEL: 09-03-2024 0910
FACL/CHAIRPERSON.....: RCH/A.FITCHER
REPORT REMARKS.......: ADMITS TO ASSAULTING ANOTHER INMATE
    224 ASSAULTING W/O SERIOUS INJURY - FREQ: 4 ATI: IF2 RFP:
         DIS GCT   / 27 DAYS / CS
         COMP:010 LAW:P   DISALLOW GOOD CONDUCT TIME
         DS        / 15 DAYS / CS / SUSPENDED 180 DAYS
         COMP:    LAW:    DISCIPLINARY SEGREGATION
                         SUSPENDED PENDING 180 DAYS CLEAR CONDUCT
         LP COMM   / 60 DAYS / CS
                   FROM: 02-13-2024  THRU: 04-12-2024
         COMP:    LAW:    LOSS OF COMMISSARY PRIVILEGES
         LP EMAIL  / 60 DAYS / CS
                   FROM: 02-13-2024  THRU: 04-12-2024
         COMP:    LAW:    LOSS OF EMAIL PRIVILEGES
------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 3869988 - SANCTIONED INCIDENT DATE/TIME: 12-15-2023 2030
DHO HEARING DATE/TIME: 01-02-2024 1317
FACL/CHAIRPERSON.....: RCH/A.FITCHER
REPORT REMARKS.......: ADMITS TO STRIKING ANOTHER INMATE
    224 ASSAULTING W/O SERIOUS INJURY - FREQ: 1 ATI: IF2 RFP:
         DIS GCT   / 27 DAYS / CS
         COMP:010 LAW:P   DISALLOW GOOD CONDUC TIME
         DS        / 15 DAYS / CS / SUSPENDED 180 DAYS
         COMP:    LAW:    DISCIPLINARY SEGREGATION
                         SUSPENDED 180 DAYS PENDING CLEAR CONDUCT
         LP COMM   / 30 DAYS / CS
                   FROM: 01-02-2024  THRU: 01-31-2024
         COMP:    LAW:    LOSS OF COMMISSARY PRIVILEGES
         LP VISIT  / 30 DAYS / CS
                   FROM: 01-02-2024  THRU: 01-31-2024
         COMP:    LAW:    LOSS OF IN PERSON VISITING PRIVILEGES
------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 3649498 - MENTAL F   INCIDENT DATE/TIME: 07-10-2022 0705
DHO HEARING DATE/TIME: 07-18-2022 1045
FACL/CHAIRPERSON.....: RCH/A.FITCHER
REPORT REMARKS.......: PER MHE, IM IS NOT COMPETENT OR RESPONSIBLE FOR
                       THREATENING TO HAVE STAFF KILLED
    CHARGES: 203  THREATENING BODILY HARM




G0002     MORE PAGES TO FOLLOW . . .
```

```
LOSB7          *      INMATE DISCIPLINE DATA        *      09-09-2024
PAGE 002       *   CHRONOLOGICAL DISCIPLINARY RECORD  *      10:06:07

REGISTER NO: 67945-112 NAME..: DANDACH, ADAM
FUNCTION...: PRT      FORMAT: CHRONO    LIMIT TO ____ MOS PRIOR TO 09-09-2024

--------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 3648625 - MENTAL F   INCIDENT DATE/TIME: 07-07-2022 0730
DHO HEARING DATE/TIME: 07-12-2022 1235
FACL/CHAIRPERSON.....: RCH/A. KROPP
REPORT REMARKS.......: FOUND NOT COMPETENT AND NOT RESPONSIBLE PER THE MHE COND
                       UCTED BY PSYCHOLOGY STAFF. NO SANCTIONS APPLIED.
   CHARGES: 203  THREATENING BODILY HARM
--------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 3648675 - MENTAL F   INCIDENT DATE/TIME: 07-07-2022 1007
DHO HEARING DATE/TIME: 07-12-2022 1221
FACL/CHAIRPERSON.....: RCH/A. KROPP
REPORT REMARKS.......: FOUND NOT COMPETENT AND NOT RESPONSIBLE PER THE MHE COND
                       UCTED BY PSYCHOLOGY STAFF. NO SANCTIONS APPLIED.
   CHARGES: 203  THREATENING BODILY HARM
--------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 3637288 - MENTAL F   INCIDENT DATE/TIME: 06-05-2022 1243
DHO HEARING DATE/TIME: 06-10-2022 0818
FACL/CHAIRPERSON.....: RCH/A. KROPP
REPORT REMARKS.......: FOUND NOT COMPETENT AND NOT RESPONSIBLE PER MHE COMPLETE
                       D BY PSYCH STAFF AND NOT LIKELY TO BE RESTORED. NO SANCT
   CHARGES: 203  THREATENING BODILY HARM
--------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 3609419 - NOT RESP   INCIDENT DATE/TIME: 03-23-2022 1930
DHO HEARING DATE/TIME: 03-29-2022 1006
FACL/CHAIRPERSON.....: RCH/A.FITCHER
REPORT REMARKS.......: PSYCHOLOGY FOUND INMATE COMPETENT BUT NOT RESPONSIBLE
   CHARGES: 203  THREATENING BODILY HARM
--------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 3330635 - NOT RESP   INCIDENT DATE/TIME: 11-20-2019 0700
DHO HEARING DATE/TIME: 11-25-2019 1222
FACL/CHAIRPERSON.....: RCH/C. ORUM
REPORT REMARKS.......: INMATE WAS FOUND NOT COMPETENT AND NOT RESPONSIBLE PER
                       PSYCHOLOGY STAFF- NO SANCTIONS RECOMMENDED.
   CHARGES: 203  THREATENING BODILY HARM
--------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 3330329 - NOT RESP   INCIDENT DATE/TIME: 11-19-2019 1930
DHO HEARING DATE/TIME: 11-25-2019 1218
FACL/CHAIRPERSON.....: RCH/C. ORUM
REPORT REMARKS.......: INMATE WAS FOUND NOT COMPETENT AND NOT RESPONSIBLE PER
                       PSYCHOLOGY STAFF- NO SANCTIONS RECOMMENDED.
   CHARGES: 203  THREATENING BODILY HARM



G0002       MORE PAGES TO FOLLOW . . .
```

```
LOSB7              *      INMATE DISCIPLINE DATA        *      09-09-2024
PAGE 003           *   CHRONOLOGICAL DISCIPLINARY RECORD   *      10:06:07


REGISTER NO: 67945-112 NAME..: DANDACH, ADAM
FUNCTION...: PRT      FORMAT: CHRONO    LIMIT TO ___ MOS PRIOR TO 09-09-2024


--------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 3296155 - SANCTIONED INCIDENT DATE/TIME: 08-25-2019 1808
DHO HEARING DATE/TIME: 08-29-2019 1230         DHO REPT DEL: 08-30-2019 1604
FACL/CHAIRPERSON.....: BAS/A. GUZMAN
REPORT REMARKS.......: GUILTY BY THE GREATER WEIGHT OF THE EVIDENCE
    224 ASSAULTING W/O SERIOUS INJURY - FREQ: 2 ATI: SF3 RFP: D
        DIS GCT    / 27 DAYS / CS
        COMP:010 LAW:P
        DS         / 180 DAYS / CS / SUSPENDED 90 DAYS
        COMP:    LAW:    SUSPENDED PENDING 90 DAYS CLEAR CONDUCT
        FF NVGCT   / 60 DAYS / CS
        COMP:010 LAW:P
        LP COMM    / 365 DAYS / CS
                   FROM: 09-30-2019  THRU: 09-28-2020
        COMP:    LAW:
        LP OTHER   / 180 DAYS / CS
                   FROM: 08-29-2019  THRU: 02-24-2020
        COMP:    LAW:    LOSS OF RECREATION PRIVILEGES
        LP PHONE   / 365 DAYS / CS / SUSPENDED 90 DAYS
        COMP:    LAW:    SUSPENDED 90 DAYS PENDING CLEAR CONDUCT
        LP VISIT   / 365 DAYS / CS
                   FROM: 08-29-2019  THRU: 08-27-2020
        COMP:    LAW:
--------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 3284369 - SANCTIONED INCIDENT DATE/TIME: 07-27-2019 1350
DHO HEARING DATE/TIME: 08-01-2019 0901         DHO REPT DEL: 08-05-2019 1646
FACL/CHAIRPERSON.....: BAS/C. BICKLE
REPORT REMARKS.......: GUILTY BY ADMITTANCE
    224A ASSAULTING W/O SERIOUS INJURY - FREQ: 1 ATI: SF1 RFP: D
        DIS GCT    / 27 DAYS / CS
        COMP:010 LAW:P
        DS         / 7 DAYS / CS
                   FROM: 08-01-2019  THRU: 08-07-2019
        COMP:    LAW:
        LP COMM    / 60 DAYS / CS
                   FROM: 08-01-2019  THRU: 09-29-2019
        COMP:    LAW:    \
        LP EMAIL   / 60 DAYS / CS
                   FROM: 08-01-2019  THRU: 09-29-2019
        COMP:    LAW:




G0002      MORE PAGES TO FOLLOW . . .
```

```
LOSB7           *        INMATE DISCIPLINE DATA        *     09-09-2024
PAGE 004 OF 004 *   CHRONOLOGICAL DISCIPLINARY RECORD   *     10:06:07

REGISTER NO: 67945-112 NAME..: DANDACH, ADAM
FUNCTION...: PRT       FORMAT: CHRONO    LIMIT TO ___ MOS PRIOR TO 09-09-2024


-------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 2978666 - SANCTIONED INCIDENT DATE/TIME: 04-24-2017 1300
UDC HEARING DATE/TIME: 04-25-2017 1505
FACL/UDC/CHAIRPERSON.: BAS/CROCKETT/A BROWN
REPORT REMARKS.......: UDC FOUND INMATE GUILTY OF THE PROHIBITED ACT,SANCTIONED
                       INMATE TO LP EMAIL 90 DAYS. START: 4-25-17 END: 7-23-17.
   306  REFUSING WORK/PGM ASSIGNMENT - FREQ: 1
         LP EMAIL  / 90 DAYS / CS
         COMP:    LAW:   START: 4-25-17 END: 7-23-17
-------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 2971562 - SANCTIONED INCIDENT DATE/TIME: 04-06-2017 0821
DHO HEARING DATE/TIME: 04-20-2017 1238              DHO REPT DEL: 05-01-2017 0819
FACL/CHAIRPERSON.....: BAS/A. GUZMAN
REPORT REMARKS.......: GUILTY BY ADMITTANCE
   297  PHONE ABUSE-DISRUPT MONITORING - FREQ: 1
         DIS GCT   / 27 DAYS / CS
         COMP:010 LAW:P
         LP COMM   / 30 DAYS / CS
         COMP:    LAW:   SANCTION COMPLETE 5-19-2017
         LP PHONE  / 90 DAYS / CS
         COMP:    LAW:   SANCTION COMPLETE 7-18-2017
```

```
G0005        TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED
```

EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

## PLEA HEARING

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **COURT MINUTES - CRIMINAL** |

UNITED STATES OF AMERICA,
         Plaintiff,

      v.

Adam Dandach,
         Defendant.

| | |
|---|---|
| Case No: | 22-CR-0327(1) (PJS) |
| Date: | March 15, 2023 |
| Court Reporter: | Paula Richter |
| Courthouse: | Minneapolis |
| Courtroom: | 15 |
| Time Commenced: | 11:07 a.m. |
| Time Concluded: | 11:42 a.m. |
| Sealed Hearing Time: | |
| Time in Court: | Hours & 35 Minutes |

Defendant's true name if different from charging instrument:
☐ Parties ordered to file stipulation or proposed order for name change.
☐ Clerk of Court is directed to change name to:

Before Patrick J. Schiltz, United States District Judge, at Minneapolis, Minnesota.

APPEARANCES:
    For Plaintiff:    Laura Provinzino
    For Defendant:    Pal A. Legyel-Leahu  ☐ FPD  ☐ CJA  ☒ Retained  ☐ Appointed
    Interpreter/Language: /
    ☐ Appointment of Counsel requested -  ☐ granted  ☐ denied.
    ☐ Appointed

PROCEEDINGS:
    ☐ **Arraignment** on ☐ Information, ☐ Indictment
    ☒ **Change of Plea Hearing.**
    ☐ **Initial Appearance.**
    ☐ Indictment waived.
    ☐ Defendant withdraws plea of as to Count(s):

    ☒ PLEA:
        ☒ Guilty as to Count: 1
        ☐ "Nolo Contendere" as to Count(s):
        ☐ Defendant admits allegations in the Information.

    ☒  Presentence Investigation and Report requested.
    ☐  Bond continued.
    ☒  **~Util Set/Reset Hearings:** Sentencing is scheduled for Tuesday, August 1, 2023 at 9:00 a.m. before Judge Patrick J. Schiltz.
    ☒  Defendant remanded to the custody of the U.S. Marshal.

                                                                      _s/C. Glover_
                                                                 Courtroom Deputy

CR 22-327 PJS

SEALED

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| v. | § | **CRIMINAL NO. A19-CR-281-LY** |
| | § | |
| ADAM DANDACH, | § | |
| | § | |
| Defendant. | § | |

SCANNED
MAR 16 2023
U.S. DISTRICT COURT MPLS

### PLEA BARGAIN AGREEMENT

The United States Attorney for the Western District of Texas ("U.S. Attorney's Office" or "Government"), by and through the undersigned Assistant United States Attorney, and Defendant ADAM DANDACH ("Defendant" or "DANDACH"), personally and by and through Pal A. Lengyel-Leahu, Attorney for Defendant, enter into the following plea bargain agreement pursuant to Rule 11(c)(1), Federal Rules of Criminal Procedure:

**a.   Defendant's Agreement to Plead Guilty**

Defendant agrees to plead guilty to Count 1 of the Indictment in this case, which charges Defendant with a violation of Title 18, United States Code, Section 111(a)(1) and (b), Assaulting, Resisting, or Impeding Certain Officers or Employees.

**b.   Penalty**

The offense to which Defendant is pleading guilty carries the following penalties:

<u>Count One</u>:  18 U.S.C. §§ 111(a)(1) and (b) – Assaulting, Resisting, or Impeding Certain Officers or Employees

| | |
|---|---|
| Maximum possible prison term: | 20 years |
| Term of supervised release: | 3 years |
| Maximum fine: | $250,000 |
| Mandatory monetary assessment: | $100 |
| Amount of Restitution: | To be determined by the Court. |
| Forfeiture | None |

Any term of imprisonment imposed does not provide for parole.

## 3. Sentencing Matters

**a.     Court to Determine Sentence:** Regarding the imposition of sentence, Defendant understands that the Court decides the punishment that will be imposed. The Court shall determine the sentence to be imposed in accordance with 18 U.S.C. § 3553(a), after considering the application of the Sentencing Guidelines. The Guidelines are advisory and not binding, although the Court is required to consider them. Any prediction or estimate of the probable sentencing range or ultimate sentence that may be imposed, whether from the Government, Defendant's attorney, or the Probation Office, is not a promise, is not binding, and is not an inducement for Defendant's guilty plea or waivers. Defendant will not be permitted to withdraw Defendant's guilty plea because the sentence imposed differs from the sentence Defendant expected or hoped for.

**b.     Subject** to the Government's obligation to provide all relevant information to the sentencing court, and to the extent consistent with that information, the Government and Defendant agree as follows:

**(1)     Recommended Sentence:** Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, and in consideration of Defendant's plea of guilty, **the Government agrees to recommend at sentencing that the Court impose a sentence at the bottom end of the Guideline Range as determined by the Court, to be followed by a term of supervised release, and to recommend that the sentence be run concurrently with the federal sentence Defendant is currently serving.** Defendant understands that the Court shall determine the punishment that will be imposed and that, pursuant to this Plea Bargain Agreement, he will not be permitted to withdraw his guilty plea should the sentence imposed by the Court differ from the sentence recommended by the Government, including a sentencing above or outside the Sentencing Guidelines Range determined by the Court. Defendant further understands that, pursuant to this Plea Bargain Agreement, he cannot challenge on appeal the sentence imposed by the Court, even if it differs from the sentence recommended by the Government.

**(2)     Acceptance of Responsibility:** The U.S. Attorney's Office will not oppose that Defendant receive the maximum applicable downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1, so long as Defendant, prior to sentencing, refrains from engaging in any conduct that may demonstrate a lack of acceptance of responsibility, including: violating any condition of release, engaging in obstruction of justice, and/or providing false or misleading statements or information to the Court, U.S. Probation Office, U.S. Pretrial Services Office, U.S. Attorney's Office, or any law enforcement entity.

**c.     Reservation of Sentencing Rights:** Notwithstanding the above provisions, both the Government and Defendant reserve the rights to: (1) inform the U.S. Probation Office and the Court of all information relevant to determining sentence; (2) dispute facts relevant to sentencing; (3) seek resolution of disputed facts or factors in conference with opposing counsel and the U.S. Probation Office; (4) allocute at sentencing (consistent with promises by the Government

concerning recommended findings and punishment); and (5) request the Court to depart from the applicable supervisory guideline range based upon aggravating or mitigating factors.

**4.     Defendant's Additional Obligations**.

This Plea Agreement does not require the Defendant to cooperate with law enforcement authorities in the investigation or prosecution of other criminal offenses. If the Defendant does cooperate by providing complete and truthful information about other criminal offenses, Defendant understands that it is within the sole and exclusive discretion of the government to determine whether (a) to inform the Court, at sentencing, about the Defendant's cooperation and (b) to move at sentencing for a reduced sentence below the advisory Guideline range of imprisonment (under USSG § 5K1.1 or otherwise) based on the Defendant's cooperation, and the extent of any reduction to be requested. If a motion for a reduced sentence is filed, Defendant understands that whether and to what extent to grant any such motion will be within the sole and exclusive discretion of the Court.

**5.     Factual Basis for the Guilty Plea**

Defendant agrees that the Government's evidence at trial would have established the following facts, which are true and correct, proving beyond a reasonable doubt each of the elements of the crime(s) charged:

On August 25, 2019, Defendant was incarcerated at FCI Bastrop serving a prior federal conviction. Defendant was on suicide watch. Defendant asked to use the restroom and RN B.C., a nurse and an employee of the United States, told Defendant to put on his smock. Defendant did not initially comply, but eventually put on his smock. B.C. then opened Defendant's cell door. Defendant exited his cell and began walking towards the restroom. He turned around and punched B.C. with his right closed fist. Defendant struck B.C. in the mouth, which knocked B.C.'s front tooth out and split open his upper and lower lip, causing B.C. bodily injury. B.C. was able to restrain Defendant until other staff was able to place Defendant in hand and leg restraints. Defendant was placed back in the suicide watch cell. The incident was recorded on security video.

**6.     Government's Agreement**

In exchange for Defendant's agreement to plead guilty and to waive the rights listed in this plea agreement, the United States Attorney's Office for the Western District of Texas agrees to the following:

> **Motion to Dismiss:** Upon imposition of sentence, if there are remaining counts, the government will move to dismiss the remaining charges against Defendant contained in the Indictment.

**Forebear Filing Charges:** The Government agrees it will not further criminally prosecute Defendant for the conduct giving rise to the charge(s) contained in the Indictment or discussed in the facts set forth in this plea agreement.

7. **Defendant's Related Agreement**

a. **Advice of Trial Rights.** Defendant understands that Defendant has the following rights:

    (1)    The right to plead not guilty, or having already so pleaded, to persist in that plea;

    (2)    The right to a trial by jury;

    (3)    The rights at trial to confront and cross-examine adverse witnesses; to be protected from compelled self-incrimination (the right to remain silent); to testify and present evidence; and to compel the attendance of witnesses;

    (4)    The right to be represented by counsel – and, if necessary, to have the court appoint counsel at public expense – at trial and at every other stage of the proceeding.

b. **Waiver of Trial Rights.** Defendant understands that, by pleading guilty, Defendant waives and gives up the following rights: the right to plead not guilty; the right to a jury trial; the right to confront and cross-examine adverse witnesses; the right to remain silent, or to testify; and the rights to present witnesses and to compel the attendance of witnesses at trial. In addition, the Court may require Defendant to answer truthfully questions about the offense(s), and Defendant may be prosecuted if Defendant knowingly makes false statements or gives false answers.

c. **Waiver of Additional Rights.** In addition to giving up the rights described above, Defendant agrees to give up and waive the following:

**Pretrial Motions:** Defendant understands that Defendant could raise a number of issues and challenges by pretrial motion, including motions to suppress evidence and to dismiss the charges against Defendant. By entering into this agreement and pleading guilty, Defendant agrees to give up any and all claims Defendant has made or might have made by pretrial motion, and agrees to the dismissal of any motions that currently are pending.

**Discovery:** In addition to waiving pretrial motions, Defendant agrees to give up and waive any claims Defendant may have now or may acquire later to any information possessed by the prosecution team that might be subject to disclosure under discovery rules, including the Federal Rules of Criminal Procedure, the *Jencks* Act, local court rules, and Court Orders, including information that might

be considered exculpatory or impeaching under *Brady v. Maryland* and *Giglio v. United States*. Defendant waives any continuing discovery request and additional discovery. Defendant also waives all rights to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act (5 U.S.C. § 552) or the Privacy Act (5 U.S.C. § 552a).

**Appeal:** Defendant knowingly and voluntarily waives and gives up the right to appeal Defendant's conviction or sentence on any ground, including but not limited to any challenges to the determination of any period of confinement, monetary penalty or obligation, term of supervision and conditions thereof, and including any appeal right conferred by 18 U.S.C. §3742, except in a case in which the sentence imposed by the Court is greater than the maximum sentence authorized by statute. Moreover, Defendant waives the right to challenge the sentence imposed, knowing that Defendant's sentence has not yet been determined by the Court. In sum, Defendant understands that Defendant cannot challenge the sentence imposed by the Court, even if it differs from any sentencing range or estimate made by Defendant's attorney, the attorney for the Government, or the Probation Officer. Realizing the uncertainty in estimating what sentence Defendant will ultimately receive, Defendant knowingly and voluntarily waives the right to appeal the sentence or, as set forth below, to challenge it in any post-conviction proceeding, in exchange for the concessions made by the Government in this Agreement, except as otherwise provided herein.

**Collateral Attack:** Defendant agrees to waive and give up the right to challenge Defendant's conviction or sentence in a post-conviction collateral challenge, including but not limited to a proceeding pursuant to 28 U.S.C. §§ 2241 and 2255; except, Defendant does not waive the right to challenge Defendant's sentence based on ineffective assistance of counsel or prosecutorial misconduct. If the Defendant makes a claim of ineffective assistance of counsel, Defendant will waive any claim of attorney/client privilege arising from counsel's representation.

**Legal Fees and Expenses:** Defendant hereby stipulates and agrees that Defendant is not entitled to and shall not seek from the United States any attorney's fees or other litigation expenses Defendant incurred in connection with this prosecution. Defendant further stipulates and agrees that by reason of the dismissal of, or the Government's agreement to forebear filing or pursuing, certain criminal charges as part of this plea agreement, Defendant is not a "prevailing party" for the purpose of seeking attorney's fees and other litigation expenses under the Hyde Amendment, Pub.L. 105-1119, Title VI, § 617, 111 Stat. 2519, codified at 18 U.S.C. § 3006A. Defendant further agrees that as a term of this plea agreement, Defendant hereby waives any and all claims against the United States for attorney's fees and other litigation expenses under said law.

8.    **Conclusion**

    a.    **Collateral Consequences**

Defendant understands that in addition to the punishment described above, his/her guilty plea and conviction may have other or collateral consequences. These consequences may adversely affect such things as the Defendant's right to possess firearms and the right to vote. If the Defendant is not a U.S. citizen, as a result of a plea of guilty, Defendant may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant has discussed with his/her attorney the punishments and consequences of pleading guilty, understands that not all of the consequences can be predicted or foreseen, and still wants to plead guilty in this case.

    b.    **Breach of Agreement**

In the event Defendant violates or breaches any of the terms of the plea agreement, including Defendant's agreement to cooperate, the Government will be released from its obligations under this agreement and in its sole discretion may do any or all of the following:

    (1)    Move to set aside Defendant's guilty plea and proceed on charges previously filed and any additional charges;

    (2)    Use against Defendant any statements or information Defendant provided during the course of cooperation, at sentencing or in any prosecution;

    (3)    Seek additional charges based on false statements, perjury, obstruction of justice, or any other criminal acts committed by Defendant before or during Defendant's cooperation, including offenses disclosed during Defendant's cooperation;

    (4)    Seek to revoke or modify conditions of release; and/or

    (5)    Decline to file a motion for a reduced sentence.

    c.    **Voluntariness**

In entering into this Plea Bargain Agreement, agreeing to plead guilty, and waiving the rights set forth above, Defendant understands and affirms the following:

    (1)    Defendant has discussed with Defendant's attorney the charges, the possible punishment upon conviction, the evidence and any defenses to the charges, and the benefits and risks of going to trial.

    (2)    Defendant has a right to plead not guilty, and by entering this agreement and pleading guilty, Defendant is waiving or giving up a number of important rights, described above.

(3)     Defendant has had sufficient time to discuss the case with Defendant's attorney, and is satisfied with the advice given by counsel.

(4)     Defendant's good judgment and ability to understand this plea agreement and its consequences are not impaired or diminished due to the use of alcohol, drugs, or medications, nor to the effect of any physical, mental, or emotional illness, disease, or injury. Defendant understands the significance of the proceedings and the importance of the decision to plead guilty and waive rights.

(5)     Defendant enters this agreement and decision to plead guilty voluntarily, and not on account of force, threats, promises or inducements, apart from the promises and inducements set forth in this agreement.

(6)     Defendant agrees to plead guilty because Defendant is guilty of the offense charged.

**d.     Entire Agreement**

This Plea Bargain Agreement constitutes the entire agreement between Defendant and the United States Attorney's Office for the Western District of Texas, and is binding only upon those parties. The parties have not made any other promises or inducements, or entered into any other agreements. The Court may accept or reject this agreement, and may defer this decision until it has reviewed the presentence report. If the Court accepts the agreement, but declines to follow the Government's sentencing recommendations, Defendant has no right to withdraw Defendant's guilty plea.

Respectfully submitted,

ASHLEY C. HOFF
United States Attorney

By:     */s/ Keith M. Henneke*
KEITH M. HENNEKE
Assistant United States Attorney

*Laura M. Provincio*
March 15, 2023

Defendant's Signature:  I, ADAM DANDACH, have carefully read and reviewed the foregoing plea agreement in its entirety.  After giving careful and mature consideration to the making of this plea agreement, thoroughly discussing the plea agreement with my attorney, and fully understanding my rights with respect to the pending criminal charge(s), and in reliance upon my own judgment and the advice of my attorney, I freely and voluntarily agree to the specific terms and conditions of the plea agreement.  I admit that all of the facts contained in the Factual Basis are true and correct, and that I am guilty of the offense(s) to which I am pleading guilty.  Moreover, I am satisfied with my attorney's representation of me in this matter, with the advice my attorney has provided to me, and that my attorney has rendered effective assistance.

ADAM DANDACH            15mar23

*Defendant*

3/14/22

Date

Defense Counsel Signature:  I am counsel for Defendant, ADAM DANDACH, in this case. I have fully explained to Defendant all of Defendant's rights with respect to the pending criminal charge(s).  I have carefully reviewed this plea agreement in its entirety with Defendant and provided Defendant with my best professional advice.  In my opinion, Defendant's decision to enter into this plea agreement is made freely, voluntarily, and with full knowledge of its obligations and consequences.

PAL A. LENGYEL-LEAHU

*Attorney for Defendant*

14 MARCH 2022

Date

15MAR2023

EXHIBIT C

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 22-327 (PJS)

UNITED STATES OF AMERICA,

      Plaintiff,

v.

ADAM DANDACH,

      Defendant.

**GOVERNMENT'S
SENTENCING POSITION**

      The United States of America, by and through its attorneys, Andrew M. Luger, United States Attorney for the District of Minnesota, and Laura M. Provinzino, Assistant United States Attorney, hereby submits its position with respect to sentencing of defendant Adam Dandach. The government requests a sentence of 27 months for Dandach's assault of a Bureau of Prisons (BOP) employee.

**BACKGROUND OF THE OFFENSE**

      The following undisputed facts are set forth in the Plea Agreement and the Presentence Report, PSR ¶¶ 6–7, and will be summarized here to identify that this is a serious crime.

      Dandach was in federal custody in Texas based on a conviction in the Central District of California for attempting to provide material support to a designated foreign terrorist organization and for making a false statement on a passport application. PSR ¶ 24. Dandach was serving his sentence at FCI Bastrop where he received insufficient mental health care.

On August 25, 2019, while incarcerated at FCI Bastrop, Dandach was on suicide watch and needed to use the bathroom. He did not have clothing on, and B.C., a registered nurse employed by BOP, asked Dandach to put on a smock. While initially disinclined, Dandach eventually decided to put on the smock. B.C. then opened Dandach's cell, and Dandach began to walk to the bathroom. Instead of proceeding to the bathroom, however, Dandach abruptly stopped, turned, and punched B.C. with a closed right fist.

Dandach struck B.C. in his mouth, which knocked out B.C.'s front tooth and split open his upper and lower lip. Fortunately, B.C. was able to restrain Dandach until other staff could respond.

As a result of the assault, B.C.'s front tooth was broken, which required multiple oral surgeries, including a root canal, temporary crown, and a dental implant. This was a serious bodily injury.

The defendant pleaded guilty on March 15, 2023, and admitted the factual basis for the offense. While defendant's counsel provided a lengthy letter setting forth objections to the PSR, the letter did not contain an additional statement regarding acceptance of responsibility. PSR ¶ 10. Nonetheless, the defendant's admission of the offense and timely notification to the government of his willingness to enter a guilty plea, which was handled pursuant to Fed. R. Crim. P. 20, qualifies as acceptance of responsibility.

**SENTENCING GUIDELINES CALCULATION**

The district court should begin sentencing proceedings by correctly calculating the applicable sentencing guidelines range. *Gall v. United States*, 552 U.S. 38, 49 (2007).

The government stands by the representations it made in the Plea Agreement to recommend a sentence at the bottom-end of the guidelines range, to be followed by a term of supervised release. PSR ¶ 2. Importantly, the government also agreed to recommend that the sentence imposed for the assault run concurrently with the defendant's current federal sentence. PSR ¶ 2.

The government agrees with the guidelines calculation in the Presentence Report. The base offense level for the assault is 14. PSR ¶ 11. Because victim B.C. sustained a serious bodily injury, a 5-level enhancement applies. PSR ¶ 12. The defendant accepted responsibility by timely notifying the government of his interest in pleading guilty and doing so, resulting in a 3-level reduction. PSR ¶¶ 18–19.

Dandach's total offense level of 16 and criminal history category III results in an advisory sentencing guidelines range of 27 to 33 months. PSR ¶ 63.

**SECTION 3553(a) SENTENCING FACTORS**

In addition to determining Dandach's sentencing guidelines range, 18 U.S.C. § 3553(a)(4), this Court is required to assess the other applicable sentencing factors under § 3553(a). Those factors include the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just

punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment; the need to avoid unwarranted sentencing disparities; and the need to provide restitution to victims. *See* 18 U.S.C. § 3553(a).

In this case, considering all the sentencing factors, the government respectfully submits that a sentence of 27 months—a sentence at the low-end of the advisory guidelines range—is appropriate for Adam Dandach. Such a sentence would be sufficient but not greater than necessary to accomplish federal sentencing goals in this case.

First, defendant committed a serious offense that is deserving of appropriately serious punishment. The instant offense involved an unprovoked assault against a BOP employee that resulted in serious bodily injury. This assault was part of a spate of other assaults by Dandach within BOP between 2017 and 2022—when he was incarcerated at FCI Bastrop and not adequately treated for his various mental health needs. PSR ¶ 24. While his assaultive behavior has largely been corrected with a transfer to a BOP medical facility at Rochester FMC, the assault caused serious pain and suffering and out-of-pocket expense to the BOP employee.

Second, a sentence within the guidelines range will promote respect for the law, mete out just punishment for the offense, and deter assaults within BOP. It will also protect the public from Dandach's further criminal conduct. PSR ¶ 84.

Third, a sentence within the guidelines range will avoid unwarranted sentencing disparities among similarly-situated defendants who commit assaults against BOP employees.

Fourth, this Court is to consider "the need for the sentence imposed . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(D). The resolution as provided allows the defendant to remain in a facility that allows for appropriate correctional treatment for his significant history of mental and emotional health problems, including his most recent diagnoses of schizoaffective disorder, bipolar type, in partial remission with medication; autism spectrum disorder, without accompanying intellectual or language impairments; binge-eating disorder, in full remission; and other specified personality disorder. PSR ¶ 7. The PSR identifies that Dandach will continue to benefit from ongoing mental health counseling and medication management at Rochester FMC, which is necessary given his significant mental health diagnosis. PSR ¶ 85.

Finally, restitution is not only appropriate but required in this case. 18 U.S.C. § 3663A. According to the terms of the plea agreement, Dandach agreed that restitution would be determined by the Court. After Dandach's plea was entered, the victim was provided an opportunity to declare the losses that resulted from the assault. The victim submitted invoices from the resulting root canal and dental implant. PSR ¶ 8. The total compensable amount owed to the victim is $5,656.26. PSR ¶¶ 8, 74.

An order of restitution will provide accountability for Dandach's conduct. Given his commitment to pay restitution to his victim and the ability to pay it based on the cash in his commissary, PSR ¶ 59, the government believes that a fine is not appropriate.

**CONCLUSION**

In this case, considering all the sentencing factors, the government respectfully requests that this Court impose on Adam Dandach a sentence of 27 months of imprisonment followed by a 3-year-term of supervised release. This sentence should be concurrent to the lengthy one Dandach is already serving.[1] PSR ¶ 64 (citing U.S.S.G. § 5G1.3(a)). Such a sentence would be sufficient but not greater than necessary to accomplish federal sentencing goals.

Date: July 21, 2023                    Respectfully Submitted,

                                       ANDREW M. LUGER
                                       United States Attorney

                                       */s/ Laura M. Provinzino*
                                       BY: LAURA M. PROVINZINO
                                       Assistant United States Attorney
                                       Attorney ID No. 0329691

---

[1] Dandach's anticipated release date from the BOP is September 2, 2027. *See* BOP Inmate Locator, http://bop.gov/inmateloc/ (last accessed July 21, 2023).

## Certificate of Service

I am a citizen of the United States and am employed in the County of Orange, California. I am over 18 years of age, and I am not a party to the above-entitled action. My business address is the United States Attorney's Office, Ronald Reagan Federal Building and United States Courthouse, 411 West Fourth Street, Suite 8000, Santa Ana, California 92701.

That I am employed by the United States Attorney for the Central District of California, who is a member of the Bar of the United States District Court for the Central District of California, at whose direction the service was made. On this date, October 4, 2024, I served a copy of the foregoing document(s), described as follows:

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)** in the following manner:

■ by placing the documents in a sealed envelope, bearing the requisite postage thereon, and placing it for mailing via the U.S. Postal Service address as follows:

**Adam Dandach, Reg No. 67945-112**
**Federal Medical Center, PMB 4000**
**Rochester, MN 55903-4000**

☐ by e-mailing a pdf. version of the document(s) to the e-mail addresses specified as:

I declare under penalty of perjury that the foregoing is true and correct, executed on October 4, 2024 at Santa Ana, California.

                                        /s/
                        LINDA BENNETT